5th Pleas of the Court, I'm Charles Talbot representing Mr. Churchill. This is a social security denial and the main point to be emphasized in the case is the ALJ's failure to abide by the agency's own rules and regulations. Specifically, the ALJ essentially rejected all of the medical evidence in this case from treating sources, relying solely on a one-time examiner, Dr. Janssen. Agency rules under 20 CFR 416.913 and SSR 06.03p require consideration of medical information regardless of the source. The agency differentiates between what are termed acceptable medical sources. These are doctors and psychiatrists and psychologists. Dr. Janssen was a psychologist and the other treatment providers were all rejected on several grounds. First of all, the judge rejected all of the other medical evidence in this case. One of the reasons given was because they were not acceptable medical sources. In at least one instance, she mischaracterized a physician as not being an acceptable medical source. That's referencing Dr. Hargrave. Secondly, she says that the information is not to be considered because the information is provided in DSHS checkbox forms. The reports that were filled out were DSHS forms, but they were not completely checkbox in the sense that in every single DSHS report there's annotated notes from the examiner as to their findings. Furthermore, and this is the stronger point, is all of the other medical providers in this case are treatment providers. They're not one-time examiners like Dr. Janssen. The reports from Hale, Zimmerman, Hargrove, Moore are all from treating sources. These are people who are on the active treatment team providing medical treatment for Mr. Churchill's mental illness. So they have more than just this form. The judge says, well, also that these people relied on Mr. Churchill's subjective reports. That ignores the fact that with respect to these reports, each of the examiners is part of the treatment team and has the entirety of the medical record available to them as part of their assessment. The only person who didn't have any substantial information is Dr. Janssen. She had one note, one page that was post-filing in this case. The case was filed on April 8, 2008. She had only one piece of paper from after this date and was only shortly after this date. And if anybody is relying solely on the subjective reports of Mr. Churchill, that's her. But irrespective of that, if you go through all the medical records, they all rate Mr. Churchill's GAF score in the 40s, ranging from 45 to 49, indicating very serious mental illness. And even Dr. Janssen rated him at a 49. That indicates severe mental illness. Additionally, the ALJ left out even Dr. Janssen's limitations in the hypothetical questions asked of the vocational expert. Dr. Janssen said that Mr. Churchill would have difficulties persisting through a workday. That limitation is ignored by the judge. It's not mentioned in the RFC and it's not mentioned in the questions asked of the vocational expert at the hearing. In cross-examination, when that limitation was presented to the vocational expert, the comment was that that would preclude sustained gainful employment. So we have errors in terms of evaluating the witnesses and failure to list the relevant limitations in the questions to the vocational expert. What relief do you seek? Remand for a new hearing and consideration of the medical evidence. If there's no questions, I'm finished. I have no question. Judge Noonan, if you have any questions now? No. Okay. What I'd suggest then is we can let Mr. Talbot sit down and you can reserve your remaining time for a rebuttal after Ms. Talbot has her say. Thank you. May it please the court, Martha Bowden on behalf of the Acting Commissioner of Security, good morning. I'd like to address some of the topics that Mr. Talbot addressed when he was presenting. First of all, it's not an accurate statement that Dr. Jansen was the only opinion that the ALJ relied on in making her non-disability determination. Dr. Jansen was was one of the opinions. She also relied on the state agency consultants who felt that the claimant was not fully credible and that there was no objective evidence that supported his subjective report of symptoms. Did the ALJ offer reasons for disregarding the opinions of Dr. David Moore? Yes, she gave one, which was that it was inconsistent with the objective medical evidence. That's what she said in the paragraph where she addressed Dr. Moore's opinion. She did not specify in that paragraph on page 25 of the record what those specific pieces of objective evidence were, but two pages and one page prior in the body of the decision, she does chronicle the medical evidence that she found probative and it Dr. Moore said that Mr. Churchill was markedly too severely limited in many functional domains that were required for even unskilled work and the medical evidence didn't support that and she chronicles the medical evidence in the body of her decision. Counsel, do we have any precedent in the Ninth that an ALJ has to be in giving reasons, referring to specifics, if the ALJ thinks that a particular doctor's testimony conflicts with the objective evidence? Well, there is the case of Embry on which Mr. Churchill relies, which says just saying the objective evidence conflicts with this medical source's opinion is insufficient. However, Embry is distinguishable from this case because in the Embry matter, the evidence that was in the body of the decision that the ALJ listed and discussed actually was not inconsistent with the opinion, so that was a mischaracterization and the court found that in that case. So in this case, if you look at the evidence, in fact it does conflict with what Dr. Moore opined were the limitations. Is Mr. Talbot correct when he notes that Dr. Janssen, who the ALJ principally relied upon, didn't even include Janssen's limitations in the hypotheticals to the VE? No, those were included. What Dr. Janssen actually said was that Mr. Churchill may have limitations in his ability to handle complex tasks and what the RFC said was that he could do some complex tasks. What counsel said, Dr. Janssen said was that the claimant would have difficulty persisting through a workday. That's not what she said. She said if he were to have difficulty persisting through a workday, it would be because of his depression symptoms and not because he had cognitive problems with concentration and attendance, because she did some objective testing, some trail-making tests and a mental status examination, and she found the results of those showed that he did not have concentration and attention deficits and he had adequate recall. So what she said was if he were to have any problems persisting through a workday, it would be due to depression symptoms, but it didn't seem like she actually adopted that as a limitation. Another thing I'd like to address is that one of the reasons that the ALJ discounted the DSHS psychological evaluations was because they were in checkbox form without much narrative support. That is a factor in the regulations that that the ALJ may properly rely on to discount a medical opinion. And if you look at all of the DSHS evaluations in this case that the ALJ discounted, they are in fact checkbox forms. And other than that, there is a little narrative written by each of the, by Mr. Zimmerman and Ms. Hale and Dr. Hargrave, but what they say in their narrative section is solely what Mr. Churchill reported. So for example, in the record at page 636, what it says is Mr. Zimmerman wrote, Jeff, that's Mr. Churchill, reports an inability to concentrate, difficulty with memory recall, and staying on task, and therefore Mr. Zimmerman checked the marked box. And Dr. Hargrave stated, and this is in the record at page 645, he is mild to moderately impaired as observed, but he reported more intense symptoms under pressure, so she gave him a marked checkbox in that functional domain. And that is representative of the rest of these opinions. So all the handwriting was actually, he reported, he reported, he reported, and then that resulted in moderate and marked limitations on their forms. And that is, it doesn't, it conflicts with even their own treatment notes, which don't show that he's markedly impaired. And I'd also like to address counsel's statement that these doctors and mental health counselors were not acceptable medical sources. That is indeed one of the reasons that the ALJ gave for discounting all of those opinions. We concede error in saying that Dr. Hargrave was not an acceptable medical source. She was. But the way, but the other reasons that the ALJ gave are valid, and they're specific and legitimate, and for that reason her analysis should stand, even if one of her reasons was erroneous. And in the, for the rest of the providers, they are treating providers, but not treating sources because under the regulations they weren't acceptable medical sources. And that is fair to give them less deference because they aren't acceptable medical sources who are treated with the most deference of any provider. Do you have any other questions? I just have a general informational question. It doesn't have anything to do with the merits of this case, but we have a knowledgeable person from the agency in front of us. If this individual, Mr. Churchill, were if you were, may I just clarify, if you were awarded benefits, how much would he get? Yes. I don't know. It depends, and maybe his lawyer can answer that. It depends on his income or something like that. In this case, oh, in this case it is SSI only, a Title 16 claim, and so there's a statutory minimum. It's a chart. So it's like a monthly, and I don't know what it is now. That's fine. Okay. And I have no other questions. Okay, I have none. I hear nothing from Judge Noonan unless... No. It sounds like your excellent argument is concluded. Thank you. Please affirm. And we can return to Mr. Talbot's excellent argument. You've got a few minutes on rebuttal. Thank you. Judge, in response to your question, SSI is a need-based program. The payment of benefits is dependent upon the economic need of the recipient. So when a person is found disabled under SSI, he has a meeting with the agency and they explore his financial need. The maximum benefit that can be paid this year is $733 a month, and it goes up every year due to the cost of benefits. So it's about $12,000 a year, roughly. Well, no, about $8,400. $8,400, okay. And since this case was filed in 2008, I believe April, benefits would be payable if he's successful starting the month after he applied. So it would be May of 2008. That's fine. I'm satisfied. Go right ahead with your rebuttal. All right. Well, you asked about Dr. Moore. The judge rejected Dr. Moore's statement in a simple sentence saying, Dr. Moore's opinion is not supported by the objective medical evidence and is granted little weight. There's little meat on that bone, and the Embry case says you got to have more. And we cited that and argued that in our brief. And that's important because this is an acceptable medical source, and Dr. Moore's opinion is from an acceptable medical source. As far as Dr. Hargrave is concerned, she is also an acceptable medical source, but not found by the judge as an acceptable medical source. And she put some pretty severe restrictions in her assessment, including the ability to understand, remember, and follow complex instructions, learn new tasks, interact appropriately with public contacts, and maintain appropriate behavior in the workplace. So that was not found significant by the judge. Now, as far as the report by Dr. Janssen, there's more to it than what counsel said. And if I could go back to what she said in the way of limitations, and if you'll permit me. She said that regarding her functional limitations, she said that his major depressive disorder has psychotic features, that he may have difficulty in persisting through a workday, which would be attributable to vegetative symptoms of depression, that he may have difficulty performing complex tasks due to a psychotic thought process, and the fact that he isolates himself would lead to difficulty interacting with the public or with co-workers on a continuous basis. She assessed a GAF score of 49. And this court, we didn't cite in our materials because it was a case decided by this court after the briefs were filed, but the court issued the Garrison case, Garrison versus Colvin last year. That's found at 759 F3 995. The court utilized GAF scores as a indicator of severity. And as I said in my opening remarks, the GAF scores in this case by all of the individuals, including Dr. Janssen, all fall within a very narrow range of 45 to 49, indicating that it's a pretty severely mentally impaired individual. That's one of the reasons why we didn't argue credibility in this case. That's mentioned peripherally, particularly in a response brief, because with a person that's so seriously impaired, we thought it would be contraindicated to argue against credibility, because we just don't think this individual, because of the level of severity of his mental illness, is really able to keep it together long enough throughout these numbers of years to give any sort of consistent reference to his problems. And keep in mind that credibility in the Social Security context does not mean what it means in common parlance. It doesn't mean a person is telling the truth or lying. What it means is their statements about their condition are not the truth. It means something else. So we stayed away from that, because with somebody that is as severely disabled as Mr. Churchill, we didn't think that would be helpful. Thank you. Thank you, counsel. Ms. Bowden, are you familiar with Garrison? Yes. No, that's fine. I just wanted to make sure you were Mr. Talbot and Ms. Bowden for their fine arguments. We appreciate it. The case of Churchill v. Colvin shall be submitted.
judges: Noonan, Hawkins, Gould